UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-07-0454 PJH (EMC) |
| Plaintiff, | |
| v. | **ORDER GRANTING GOVERNMENT'S MOTION TO AMEND RELEASE CONDITIONS** |
| LATOSHA GARDNER, | |
| Defendant. _____/ | |

Defendant Latosha Gardner was indicted on July 17, 2007 on one count of conspiracy to engage in sex trafficking of a minor under 18 U.S.C. § 371, and one count of sex trafficking of a minor under 18 U.S.C. § 1591. On August 16, this Court held a detention hearing. After considering the parties' proffers and the report and recommendation of Pretrial Services, the Court granted Ms. Gardner pretrial release subject to numerous conditions. The conditions of release required that Ms. Gardner (1) shall appear at all proceedings as ordered by the Court; (2) shall not commit any federal, state, or local crime; (3) shall not harass, threaten, intimidate, injure, tamper with, or retaliate against any witness, victim, informant, juror, or officer of the Court, or obstruct any criminal investigation; (4) shall not travel outside the Northern District of California; (5) shall report to Pretrial Services as directed; (6) shall not possess any firearm, destructive device, or other dangerous weapon; (7) shall maintain current employment, or if unemployed shall seek and maintain verifiable employment; (8) shall have no contact with any co-defendant out of the presence of counsel; (9) shall not change residence without prior approval of Pretrial Services; (10) shall comply with a curfew as determined by Pretrial Services; and (11) shall have no contact with minor victim

and Daphne Vickers. *See United States v. Gardner*, No. CR07-0454 PJH (N.D. Cal. Aug. 16, 2007) (order setting conditions of release and appearance of bond).

On October 22, the government moved to amend Ms. Gardner's pretrial release conditions to include the condition of electronic monitoring pursuant to 18 U.S.C. § 3142(c)(1)(B) as amended by the Adam Walsh Child and Protection Safety Act of 2006. Having reviewed the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the government's motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

A.   The Instant Case

On July 17, 2007, a grand jury indicted Ms. Gardner for her alleged part in a March 2007 conspiracy with co-defendants Shannon Blaylock and Tawakoni Seaton. All parties are charged with conspiring to engage in the sex trafficking of a 17-year old minor female, V.S. On March 10, 2007, Ms. Gardner is alleged to have accompanied Mr. Blaylock to pick up V.S. at the San Francisco Greyhound station whereupon they transported V.S. to Ms. Gardner's home to prepare V.S. for work as a prostitute. Indictment ¶¶ 2b(1)-(2). Thereafter, Ms. Gardner is alleged to have rented a car on March 20, 2007 for Mr. Blaylock to allow him to transport V.S. and collect money from V.S. *Id.* ¶ 2k. Further, the indictment alleges that, throughout the criminal enterprise, Ms. Gardner's residence was used to house V.S. between prostitution calls. *Id.* ¶ 2l(3). Ms. Gardner was arrested pursuant to this indictment on August 13.

At her detention hearing on August 16, this Court ordered that Ms. Gardner be released subject the posting of a $75,000 unsecured bond and the numerous conditions described above. The release conditions were found by this Court to be the least restrictive conditions necessary to secure her appearance and protect the safety of the community, consistent with the Bail Reform Act of 1984. *See* 18 U.S.C. § 3142(c)(1)(B).

In a letter dated October 4, almost two months after Ms. Gardner was initially released on bond, the government notified Pretrial Services and Defendant that it would seek to impose electronic monitoring. The decision to review the conditions was spurred by the assistant U.S.

attorney's ("AUSA") subsequent realization that the Adam Walsh Act mandated electronic monitoring, notwithstanding the Court's finding that it was not required.

The Adam Walsh Child and Protection Safety Act of 2006 ("the Adam Walsh Act"), Pub. L. No. 109-248, 109 Stat. 587, amended the Bail Reform Act of 1984 ("the Bail Reform Act"), 18 U.S.C. § 3142, to require that defendants charged with certain listed crimes be placed on a prescribed minimum set of release conditions. As amended, the Bail Reform Act now requires that these defendants be (1) placed on electronic monitoring; (2) "abide by specific restrictions on personal associations, place of abode, or travel"; (3) "avoid all contact with [the] alleged victim of the crime and with [any] potential witness[es] who may testify concerning the offense;" (4) "report to on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency"; (5) "comply with a specified curfew"; and (6) "refrain from possessing a firearm, destructive device or other dangerous weapon." 18 U.S.C. § 3142(c)(1)(B). These mandatory conditions are meant to "protect children from sexual attacks and other violent crimes." Pub. L. No. 109-248, tit. II, 109 Stat. at 611.

At the October 22 bond hearing, the AUSA formally requested the imposition of electronic monitoring.[1] Ms. Gardner's defense counsel objected to the imposition of electronic monitoring, arguing that the Adam Walsh Act's amendment to the Bail Reform Act is unconstitutional. Ms. Gardner argued that the conditions imposed by the Adam Walsh Act (1) constituted excessive bail in violation of the Excessive Bail Clause of the Eighth Amendment; (2) violated procedural due process; and (3) contravened the separation of powers doctrine. She relied on *United States v. Crowell*, Nos. 06-M-1095, 06-CR-291E(F), 06-CR-304S(F), 2006 WL 3541736 (W.D.N.Y. Dec. 7, 2006), which held the Adam Walsh Act amendments unconstitutional on all three grounds.

---

[1] Also raised at this bond hearing was the government's request that Ms. Gardner's bail be revoked and that she be detained. This request was made following the interception of a letter between Ms. Gardner's co-defendant, Shannon Blaylock, and his mother referencing communications Ms. Gardner had with Mr. Blaylock's mother who is Ms. Gardner's aunt. Because the bond did not expressly prohibit such communications, the Court denied the government's request to revoke bail, but modified the bond to prohibit her from communicating with Mr. Blaylock's mother and discussing facts or legal strategies of the case with any friend or relative Ms. Gardner has in common with Mr. Blaylock. *See United States v. Gardner*, No. CR07-0454 PJH (N.D. Cal. Oct. 26, 2007) (order modifying bond).

The parties were provided with an opportunity to provide supplemental briefing on the constitutionality of the Act. An additional hearing was also held to afford counsel an opportunity to argue the matter.

B.   The *Crowell* Case

In *Crowell*, the defendants were charged with crimes involving child pornography. 2006 WL 3541736, at *1. The defendants were initially released subject to certain conditions which did not include all the conditions required by Adam Walsh Act. *Id.* Notably absent were the Adam Walsh Act's mandatory conditions of curfew and electronic monitoring. Upon discovering the Adam Walsh Act's mandated conditions, the court, on its own direction, contacted the defendants to see whether they would voluntarily accept the modification of their pretrial bond to include the Adam Walsh Act conditions. *Id.* The defendants objected, claiming that the additional conditions were unconstitutional. *Id.*

The district court, in a thoughtful opinion, held that the Adam Walsh Act amendment constituted excessive bail, a violation of procedural due process, and a contravention of the separation of powers doctrine. Though it acknowledged that the conditions were not *per se* excessive, the court found that the Adam Walsh Act nonetheless violated the Excessive Bail Clause since the imposition of the conditions came without regard to "the personal characteristics of each defendant and circumstances of the offense." *Id.* at *2. The court also found the Act violated procedural due process because of its elimination of an independent judicial determination as to the mandated release conditions. *Id.* at *10. Finally, the court concluded that the Adam Walsh Act contravened separation of powers since Congress "unmistakenly and unduly encroach[ed] upon the judicial function" in setting bail conditions. *Id.* at *11.

For the reasons stated below, this Court does not find *Crowell* dispositive to the case at bar.

## II.   DISCUSSION

A.   Excessive Bail

Ms. Gardner alleges that the Adam Walsh Act violates the Excessive Bail Clause of the Eighth Amendment since the Act "imposes conditions without regard for the personal characteristics of each defendant." Def's Opp. at 6. The Court first notes that this case is not the prototypical

4

challenge to bail under the Excessive Bail Clause. Traditional challenges to bail typically involve whether the amount of bail was set too high, resulting in detention, or the failure of a court to admit a defendant to bail. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739 (1987) (determining whether pretrial detention of defendants was warranted); *Stack v. Boyle*, 342 U.S. 1 (1951) (determining whether setting of bail amount was excessive in relation to crime charged); *Galen*, 477 F.3d at 652 (determining whether enhancement of bail to $1 million from default amount of $50,000 violated defendant's civil rights); *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) (determining burden of proof required to detain defendant for risk of flight). This case deals with the conditions of pretrial release, not the amount of bail. There appears to be no case law directly on point.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. Although the explicit text of the Eighth Amendment appears to address the amount of bail fixed, no court has so limited the reach of this provision. None have held the clause does not apply to conditions of release. In *Salerno*, the issue was not the amount of bail, but the detention. If this most extreme condition -- detention -- is amenable to scrutiny under the Excessive Bail Clause of the Eighth Amendment, it would seem that conditions of release, particularly those that approach confinement in function (*e.g.*, home detention enforced by electronic monitoring), should be subject to scrutiny as well. Indeed, *Salerno* broadly states that the "substantive limitation of the Bail Clause is that the Government's proposed *conditions of release* or detention not be 'excessive' in light of the perceived evil." 481 U.S. at 754. (emphasis added).

This Court thus assumes the Excessive Bail Clause applies to conditions of release. To find a violation of the Excessive Bail Clause, a court must find that the release conditions are excessive "in light of the perceived evil." *United States v. Salerno*, 481 U.S. 739, 754 (1987). Bail (and perforce conditions of release) must be "reasonably calculated to fulfill" the government's purpose. *Stack v. Boyle*, 342 U.S. 1, 5 (1951). *See Galen v. County of Los Angeles*, 477 F.3d 652, 659-660 (9th Cir. 2007) (citing *Salerno*) (bail may not be set to achieve invalid interests or in an amount that is excessive in relation to the interests sought to be protected).

Under this analysis, the Court must first identify the government's interest in imposing the electronic monitoring condition. The Court first turns to Congress' language in the Adam Walsh Act itself. The Act states that the government's general interest is in ensuring that children have additional protection "from sexual attacks and other violent crimes." Pub. L. No. 109-248, tit. II, 109 Stat. at 611. In the context of the Adam Walsh Amendments relating to conditions of release, the government's specific interest is to prevent such crimes and attacks by those arrested and charged with one or more of the listed offenses. In order to prevail on her Eighth Amendment challenge, Ms. Gardner must either show that this interest is an invalid government interest or that electronic monitoring is excessive in relation to this interest.

The government's interest in imposing the conditions mandated by the Adam Walsh Act is valid. In *Salerno*, the Court noted the breadth of legitimate interests Congress could pursue in restricting pretrial release. *See* 481 U.S. at 753 ("[W]e reject the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release."). In particular, preventing crimes by arrestees is a "legitimate and compelling" interest. *Salerno*, 481 U.S. at 749 (internal citation omitted). To be sure, the interest vindicated by the Bail Reform Act of 1984 were substantiated by evidence presented to Congress and a congressional finding that those charged with enumerated offenses pose an elevated risk of post-arrest crimes. (*See id.* at 750). In contrast, the Adam Walsh Act contains no such express legislative findings or evidence.[2] While this fact may speak to the strength of the government's interest, it does not negate the validity of the interest.

The question then is whether the conditions legislatively imposed as applied to the current facts of the case at bar -- in this case, electronic monitoring -- is excessive in relation to the

---

[2] The conditions now in dispute were added to the bill's language only seven days prior the bill's final passage. The amendment including the conditions was passed without substantive debate or supporting congressional reports. *See* 152 Cong. Rec. S8012-02 (daily ed. July 20, 2006) (debate following passage of Sen. Hatch's amendment in the nature of a substitute that included the mandatory conditions). There are legislative findings as to the Adam Walsh Act's other provisions. *See, e.g.*, H.R. Rep. No. 109-218(I), at 23-24 (2005) (discussing the need for an enhanced sex offender registry program).

government's interest: *i.e.*, whether it is "reasonably calculated to fulfill" that purpose.[3] *Stack*, 342 U.S. at 5. As it stands, Ms. Gardner is already under curfew at the direction of Pretrial Services. Consistent with this Court's policies and practices, that curfew is enforced by monitoring. In this case, monitoring is established by voice identification which requires her to answer her home phone during the hours of her curfew to demonstrate compliance with the curfew. Under current conditions of release, electronic monitoring merely changes the manner in which her curfew is enforced. Instead of enforcement via automated telephone calls, Ms. Gardner's curfew would be enforced through electronic monitoring which provides real time rather than periodic monitoring. The monitoring, while slightly more intrusive, does not change the substantive restrictions on her liberty -- she is to comply with the curfew irrespective of how it is monitored. At the same time, because electronic monitoring provides real time information to Pretrial Services, it provides added insurance against violations of bond conditions, thus furthering the government's valid interest.

Although electronic monitoring imposes an incremental degree of intrusiveness, including the physical inconvenience of having to wear a bracelet or anklet, Ms. Gardner is not subject to a substantive restriction in her movement, nor is she subject to a bail amount that is financially out of reach that ultimately results in detention. *Cf., e.g.*, *Wagenmann v. Adams,* 829 F.2d 196 (1st Cir. 1987) (concluding that bail amount was set too high given the circumstances); *United States v. Beaman*, 631 F.2d 85 (6th Cir. 1980) (concluding that bail was set too high given the government's interest). The Court cannot conclude that the singular addition of electronic monitoring in this instance is "excessive' in light of the government's valid interest obtaining an additional safeguard against the risk of post-arrest criminal activity.

Ms. Gardner argues that the lack of "an individualized assessment of the need for electronic monitoring" runs afoul of the *Salerno* decision and the Eighth Amendment. Def's Opp. at 7. While

---

[3] Although Ms. Gardner asserts both a facial and as applied challenge, a facial challenge is difficult to sustain. In order to succeed in a facial challenge, "a challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). If the standard can be applied constitutionally under some set of circumstances, the facial challenge must fail. *See Tipton v. Univ. of Haw.*, 15 F.3d 922, 925 (9th Cir. 1994). There are circumstances where the Act can be applied constitutionally -- *e.g.,* where a court determines all the minimum conditions mandated by the Adam Walsh Act are in fact warranted.

this argument may inform her due process claim, it does not substantiate her Eighth Amendment claim. Although *Salerno* discussed and relied in part upon the existence of an individualized judicial determination in pretrial detention proceedings in upholding the constitutionality of the Bail Reform Act of 1984, *see* 481 U.S. at 751-53, this discussion took place in the context of its due process analysis, not in its analysis of the excessive bail claim under the Eighth Amendment.

Ms. Gardner also argues that the Eighth Amendment requires that a defendant be released on the least restrictive conditions, citing *Crowell*. *See Crowell*, 2006 WL 3541736, at *7. To the extent *Crowell* so holds, the Court does not find *Crowell* persuasive. Neither the plain language of the Eighth Amendment itself, nor the case law interpreting the Excessive Bail Clause require that the conditions imposed on a defendant's release will be the "least restrictive." *Salerno* and *Stack* only require that the condition not be excessive in light of the government's interest; that the condition be reasonably calculated to achieve the government's legitimate interest. *See Salerno*, 481 U.S. at 754 (holding that "bail must be set by a court at a sum designed to ensure" the government's goal); *Stack*, 342 U.S. 1 at 4-5 (concluding that bail must be "reasonably calculated" to fulfill purpose of assuring that defendant will stand trial). In short, until *Crowell*, there appears to be no case law holding that the "least restrictive" requirement of the Bail Reform Act is constitutionally mandated. It should be noted that the "least restrictive" standard was not expressly included in bail determinations prior to the Bail Reform Act of 1984. *Compare* Bail Reform Act of 1984, 18 U.S.C. § 3142(c)(B)(1), *with* Bail Reform Act of 1966, Pub. L. No. 89-465, 80 Stat. 214, *repealed by* Bail Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1976.

For the foregoing reasons, the Court concludes that the Adam Walsh Act as applied to the current facts does not violate Ms. Gardner's right to be protected from excessive bail under the Eighth Amendment.

B.   Procedural Due Process

The Court now turns to the procedural due process challenge brought by the defendant. Ms. Gardner alleges that the Adam Walsh Act violates procedural due process since it indiscriminately imposes mandatory pretrial release conditions without any particularized finding or an opportunity to be heard on whether such conditions are necessary. *See* Def's Opp. at 9. Ms. Gardner argues that

these mandatory pretrial release conditions deprive her of liberty interests, and absent an independent judicial determination, the imposition of these conditions constitutes the deprivation of liberty without due process of law. *See* U.S. Const. amend. V.

While the lack of any opportunity to be heard on the enumerated conditions imposed by the Act raises a closer question under the Due Process Clause than under the Excessive Bail Clause, the Court finds Ms. Gardner's claim as applied to the current facts cannot be sustained.

The Due Process Clause of the Fifth Amendment provides that an individual shall not be "deprived of life, liberty, or property, without due process of law." Procedural due process refers to the Constitutional requirement that deprivation of any these interests must occur in a fair manner. *See Salerno*, 481 U.S. at 746. The amount of process required, however, is not rigidly defined. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). An interest can be considered too weak to warrant additional protective procedures. *See Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006). Moreover, if no liberty interest exists, a due process claim must be dismissed. *See Kwai Fun Wong v. United States*, 373 F.3d 952, 967-68 (9th Cir. 2004) (dismissing claim for lack of a liberty interest).

A two-step analysis thus governs procedural due process claims. *See Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). First, a constitutionally protected liberty interest must be identified. *See Engquist v. Or. Dep't of Ag.*, 478 F.3d 985, 996 (9th Cir. 2007) ("A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994))) (internal quotation marks omitted). If a protected liberty interest is identified, the court then must determine the amount of process required under the Constitution wherein the court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

> administrative burdens that the additional or substitute procedural requirement would entail.

*See Mathews*, 424 U.S. at 334-35; *Brittain*, 451 F.3d at 1000.

While the Court is troubled by automaticity of the Adam Walsh Act in imposing certain release conditions without a judicial determination, the facts of the instant case do not support Ms. Gardner's procedural due process claim. Ms. Gardner argues that the Bail Reform Act implicates a fundamental liberty interest since it requires a determination of whether a defendant should be released or detained. *See* Def's Opp at 9. She also adds that the mandatory conditions imposed by the Adam Walsh Act also implicate liberty interests. *See id.* at 10. Of course, there can be no dispute that a decision to detain without bail raises fundamental liberty interests. *See Salerno*, 481 U.S. at 750. But that is not at issue here. Even assuming arguendo that some conditions of release would impair liberty interests cognizable under the Fifth Amendment, here what is at issue is the singular condition of electronic monitoring to enforce an already imposed curfew. In the instant case, the addition of electronic monitoring represents only a minor change in Ms. Gardner's current regimen of release conditions. As noted above, as applied to Ms. Gardner, the Adam Walsh Act only modifies the manner in which her curfew is being monitored.

The question is whether this incremental restriction implicates a protected liberty interest within the meaning of the Due Process Clause. The Court finds that electronic monitoring alone does not.

A protectible liberty interest can be created by legislation or regulations which impose substantive restrictions on government's discretion to deprive an individual of certain freedoms thereby implying correlative rights in the individual. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion."); *McQuillon v. Duncan*, 306 F.3d 895, 901-03 (9th Cir. 2002) (finding liberty interest in parole regulations containing mandatory language); *Riley v. Greene*, 149 F. Supp. 2d 1256 (D. Colo. 2001) (analyzing whether administrative regulations promulgated for INS creates liberty interest); *United States v. Doe*, 934 F.2d 353 (D.C. Cir. 1991) (analyzing whether Congress created protected liberty interest under the federal sentencing policy). But the Bail Reform Act as amended by the

Adam Walsh Act does not substantively restrict deprivations by the government -- it requires it. Although the Bail Reform Act prior to the Adam Walsh Act restricted the government's ability to impose the condition of electronic monitoring, procedural due process does not prevent Congress from taking away what it previously conferred. *See, e.g.*, *Richardson v. Belcher*, 404 U.S. 78 (1971) (concluding that procedural due process was not violated when Congress had a rational basis in deciding to reduce Social Security benefits that were available prior to amending of statute); *Jones v. Reagan*, 748 F.2d 1331, 1338-39 (9th Cir. 1984) (finding that Congress rationally amended statute authorizing benefits, and therefore could properly eliminate the property right). Thus, no legislatively created liberty interest is implicated.

An independent liberty interest can also implicate procedural due process protections, such as those based on other constitutional rights or otherwise found to be sufficiently substantial by the courts. *Cf. Paul v. Davis*, 424 U.S. 693, 712-13 (1976) (finding liberty interest requires more than common law privacy); *Miller v. California*, 355 F.3d 1172, 1178 (9th Cir. 2004) (liberty established under "stigma plus" test).

In the instant case, the sole condition of electronic monitoring does not implicate any such interest. It does not violate a reasonable expectation of privacy under the Fourth Amendment. Electronic monitoring simply alerts law enforcement officials when Ms. Gardner has traveled 100-300 feet away from her home in violation of her curfew restriction. It does not reveal where she is within the home. The system functions as a virtual monitor standing watch outside of Ms. Gardner's home to ensure she complies with her curfew. Thus, electronic monitoring itself does not invade Ms. Gardner's reasonable expectation of privacy since the system monitors only what would be readily observable to the public eye. *See United States v. Knotts*, 460 U.S. 276, 281-82 (1983) (concluding that no reasonable expectation of privacy exists where a person travels in public); *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). *Cf. United States v. McIver*, 186 F.3d 1119, 1126 (9th Cir. 1999) ("[T]here is no reasonable expectation of privacy in the exterior of a car because the exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a search." (quoting *New York v. Class*, 475 U.S. 106 (1986))).

11

Nor does electronic monitoring implicate any identifiable common law right to privacy and thus *a fortiori* does not establish a liberty interest under *Paul*. The common law tort of intrusion upon seclusion requires that a plaintiff show an intentional intrusion into the solitude or seclusion of another or his private affairs or concerns that is highly offensive to a reasonable person. Restatement (Second) Torts § 652B (1977). Here, similar to the Fourth Amendment analysis, electronic monitoring would not trigger liability since it only provides information that is readily gleaned by the public eye. *See id.* cmt. c ("[T]here is no liability . . . for observing [the plaintiff] or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye.").

Ms. Gardner thus fails to identify any protectible liberty interest which is deprived by the singular condition of electronic monitoring.

She relies on *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006) to establish a due process violation. However, the issue in *Scott* differs from that in the instant case. *Scott* was a Fourth Amendment case dealing with a defendant's motion to suppress evidence found in a warrantless search of the defendant's home. The preliminary issue in *Scott* was whether the defendant waived his Fourth Amendment rights by consenting to release conditions allowing law enforcement officials to conduct warrantless searches of his home. *See id.* at 865. The Ninth Circuit concluded that defendants on pretrial release do not waive their Fourth Amendment rights through consent to pretrial release conditions, and thus searches would need to be justified under Fourth Amendment jurisprudence. *See id.* at 868. In conducting its Fourth Amendment analysis of the disputed search, the court determined that defendants on pretrial release do not have reduced expectations of privacy like probationers. *Id.* at 873. The mere assumption that the defendant would be more likely to commit crimes did not enable the government to short-circuit the warrant process. *Id.* at 874. Just as the government cannot detain an individual for dangerousness merely because he has been arrested, the government cannot order warrantless searches based on the assumption that the defendant will commit further crimes. *See id.* It is in this context that the *Scott* court discusses the protections afforded by the Bail Reform Act.

While *Scott* establishes that defendants on pretrial release retain privacy interests protectible under the Fourth Amendment, it does not obviate the need to establish a liberty interest required to invoke procedural due process under the Fifth Amendment. As discussed above, electronic monitoring in and of itself does not intrude upon a reasonable expectation of privacy. It implicates neither a constitutionality-based liberty or one rooted in common law. *Scott* is thus inapposite.

Equally unavailing is Ms. Gardner's reliance on *Crowell*. *Crowell* is distinguishable because the application of the Adam Walsh Act there required the imposition not only of electronic monitoring but also a curfew. The incremental effect of the Act in *Crowell* was significantly more substantial and substantive than in the case at bar. *Crowell* did not analyze the threshold procedural due process question whether there is a deprivation of a cognizable liberty interest. Given the effect of a curfew on substantive freedom, a strong case would be made that the application of the Adam Walsh Act worked a deprivation of liberty in that case. No such conclusion obtains here.

For the foregoing reasons, the Court concludes that the Adam Walsh Act as applied to Ms. Gardner's current situation does not violate procedural due process.

C.     Separation of Powers Doctrine

Ms. Gardner's final claim is that the Adam Walsh Act violates the separation of powers doctrine. She argues that Congress is invading the province of the judiciary by "mandating a rule of decision . . . that is directly contrary to the determination already made by this Court based on an exercise of its independent judicial powers." Def's Opp. at 13.

The Constitutional separation of powers doctrine prohibits Congress from encroaching upon the powers conferred to the federal judiciary. *See Kilbourn v.* Thompson, 103 U.S. 168, 191 (1880). The Supreme Court has identified a number of legislative encroachments which transgresses the separation of powers. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995). First, Congress may not prescribe a rule of decision for the judiciary in cases without amending applicable law. *See id.* at 218 (quoting *United States v. Klein*, 80 U.S. 128 (1871)). Second, "Congress cannot vest review of the past decisions of Article III courts in officials of the Executive Branch." *Plaut*, 514 U.S. at 218. Finally, Congress may not interfere with the power of the federal judiciary to decide cases by "command[ing] the federal courts to reopen final judgments." *Id.* at 219.

Ms. Gardner argues that Congress is upsetting a prior determination by this Court, and is thereby contravening separation of powers. To the extent Ms. Gardner implies the last line of cases under *Plaut*, the argument cannot be sustained. There is no final judgment in Ms. Gardner's case. The government's assertion of the Adam Walsh Act does not reopen a final judgment; it is altering the interim conditions of release pending trial. Bail process is not part of the adjudication of the merits of the case but an ancillary proceeding. *Cf. United States v. Bibbs*, 488 F. Supp. 2d. 925, 926 (N.D. Cal 2007) (detention hearing is not a "criminal prosecution" to which the Sixth Amendment applies), *citing United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005).

Ms. Gardner also relies on *Klein* for the proposition that the "separation of powers doctrine is violated when Congress prescribes a rule of decision for courts to follow without permitting courts to exercise their judicial powers independently." Def's Opp. at 13. However, the *Klein* prohibition arises only when Congress has not amended prior law. *See Plaut*, 514 U.S. at 218 ("Whatever the precise scope of Klein, however, later decisions have made clear that its prohibition does not take hold when Congress 'amend[s] applicable law,'" *quoting, Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 441 (1992)). The Ninth Circuit has further clarified that separation of powers is violated where "Congress has impermissibly directed certain findings in pending litigation, *without changing any underlying law*." *Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1568 (9th Cir. 1993) (emphasis added). Here, Congress has amended the underlying law governing bail conditions through the Adam Walsh Act.

Finally, Ms. Gardner argues that the Eighth Amendment requires that the judiciary oversee the imposition of bail. She cites to *Crowell*, which found that "the setting of bail in federal criminal cases, with minor exceptions, has been recognized as representing the quintessential exercise of judicial power." 2006 WL 351736, at *11. *Crowell* concluded that Congress has "unmistakedly and unduly encroach upon the judicial function, exclusively reserved by Article III of the Constitution to the Judicial Branch, in violation of the separation of powers established by the Constitution's framework." *Id.* In reaching this conclusion, however, *Crowell* provides no definitive authority.

14

The Court notes that although the right against excessive bail is constitutionally protected, and the enforcement of this right rests primarily with the courts, Congress has long had a substantial hand in shaping the bail process. Legislation on bail finds its root in the Judiciary Act of 1789. This landmark act explicitly required bail of all defendants, but authorized denial of bail where the defendant's offense was punishable by death. *See* Judiciary Act of 1789, § 33, 1 Stat. 73, 91 (1789). *See also* Caleb Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U. Pa. L. Rev. 959, 971 (1965) (finding that Congress provided an absolute right to bail in non-capital cases); *Bail: An Ancient Practice Reexamined*, 70 Yale L.J. 966, 967 n.13 (1961). As the Court in *Salerno* noted, Congress has, consistent with the Eighth Amendment, defined the classes of cases in which bail is allowed. 481 U.S. at 754, *citing Carlson v. Landon*, 342 U.S. 524, 536-37 (1952).

Currently, the Bail Reform Act prescribes in significant detail the bail process and standards, including the form of hearing (including allowing the government to proceed by proffer), creates presumptions for certain cases, specifies standards by which detention and conditions of release are determined, and allocates the burdens of proof. *See Salerno*, 481 U.S. at 747 (Bail Reform Act regulates rather than punishes).

While the Adam Walsh Act is qualitatively different in that it mandates certain conditions of release, these release conditions are incremental. Importantly, Congress has not deprived the courts of the fundamental role of determining whether an arrestee is to be detained or released on conditions. Neither Ms. Gardner nor *Crowell* cites any authority directly addressing whether legislation such as the Adam Walsh Act, regulating a field already immersed in legislative prescription and which does not substantially alter the fundamental function of the court, constitutes a violation of the separation of powers. Absent clearer authority, the Court is reluctant to find a constitutional violation on this ground.

///
///
///
///
///

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the government's request to amend Ms. Gardner's bond to include a provision for electronic monitoring. Pretrial Services is requested to take the necessary steps required to comply with this provision.

This ruling is without prejudice to Ms. Garner renewing her challenge should conditions change.

IT IS SO ORDERED.

Dated: November 28, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge